# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RICKEY E. FERDINAND, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> JAMES HURLEY, ) <br> ) <br> Respondent. ) | Case No. 16-0232-CV-W-GAF-P |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Northeast Correctional Center in Bowling Green, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2011 conviction and sentence for forcible rape, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's conviction was affirmed on direct appeal. Doc. 9-5. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied without an evidentiary hearing (Doc. 9-6, pp. 160-170), and that denial was affirmed on appeal therefrom (Doc. 11-11).

### Statement of Facts

In affirming the denial of post-conviction relief, the Missouri Court of Appeals, Western District, set forth the following facts:

> On March 18, 1993, [Petitioner] Rickey Ferdinand entered a home in Kansas City and had sexual intercourse with C.G., a fifteen-year-old girl, without her consent and by use of forcible compulsion. Ferdinand was subsequently arrested and C.G. provided vaginal swabs for examination by the Kansas City Police Department Crime Laboratory ("Crime Lab"). C.G. also made several statements to the police identifying Ferdinand as the perpetrator.
>
> On August 19, 1993, the State indicted Ferdinand for forcible rape under § 566.030, RSMo Supp. 1990, or, in the alternative, first degree sexual assault

under § 566.040, RSMo Supp. 1986. On August 20, 1993, a chemist at the Crime Lab tested the DNA samples provided by C.G. but was unable to reach a conclusive result as to her attacker's identity due to the inadequate DNA testing equipment of the time. Remaining untested DNA material was stored at the Crime Lab in case of possible future testing. On March 28, 1994, the State dismissed its case against Ferdinand due to a lack of definitive DNA evidence linking him to the crime.

On April 11, 1994, the State re-indicted Ferdinand for forcible rape under § 566.030, RSMo Supp. 1990, or, in the alternative, first degree sexual assault under § 566.040, RSMo Supp. 1986. The State's primary evidence at this time was the testimony of C.G. identifying Ferdinand as her attacker. The State again dismissed the case due to lack of conclusive DNA evidence proving that Ferdinand was the perpetrator beyond a reasonable doubt.

In 2009, the Crime Lab retested C.G.'s DNA samples due to technological improvements in DNA testing technology. This test definitively identified Ferdinand as the source of the semen in C.G.'s vaginal swab. On May 28, 2010, the State indicted Ferdinand with forcible rape with a weapon under § 566.030, RSMo Supp. 1990 and first degree sexual assault under § 566.040, RSMo Supp. 1986. The State also charged Ferdinand as a prior and persistent sexual offender under §§ 557.036, 558.016, and 558.018, RSMo Supp. 1990.

On January 11, 2011, Ferdinand filed a motion to dismiss the rape charge with prejudice, arguing that the statute of limitations for that charge had run. His motion also made due process and right to a speedy trial claims. Regarding the statute of limitations argument, Ferdinand contended that the original charges filed against him in 1993 and 1994 did not allege that he displayed a dangerous instrument in committing the rape, making the charge an undefined felony carrying a limitations period of three years from the commission of the offense.

In response, the State argued that because C.G. was under the age of seventeen at the time of the crime, the crime was governed by the statute of limitations in Section 556.037 rather than Section 556.036 (as Ferdinand asserted). As Section 556.037 existed in 1993 and 1994, the limitations period for rape of someone age seventeen or under was ten years after the commission of the offense—a period which would have run by the time of the 2010 indictment. However, the limitations period found in 556.037 had been extended even further by statutory amendments in 1997 and 2004; the State argued that those extensions applied retroactively, bringing the indictment well within the applicable limitations period. A hearing on Ferdinand's motion was held on February 9, 2011 and the trial court denied his motion.

Before trial, the trial court granted the State leave to file an Amended Information in Lieu of Indictment. The Amended Information alleged that Ferdinand committed forcible rape, but dropped the allegations that he was a prior

2

and persistent sexual offender. It also dropped the allegations that Ferdinand committed forcible rape with a weapon. Also before trial, Ferdinand testified that he waived his right to a jury trial in favor of a bench trial, and that he waived his right to appeal the statute of limitations claim in exchange for the amendment of charges. Ferdinand was found guilty and was sentenced to seven years' imprisonment.

Doc. 9-11, pp. 2-4 (alteration added).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## Discussion

Petitioner asserts three grounds for relief: (1) his conviction for forcible rape violated the statute of limitations; (2) the state was without jurisdiction to file the third indictment against him "because the statute of limitations ran" on the prior indictments; and (3) his conviction violates his Sixth Amendment right to a speedy trial. Doc. 1, pp. 5-7. Respondent argues that Ground 1 is not cognizable and, alternatively is without merit; that Ground 2 is not cognizable; and that Ground 3 is without merit. Doc. 9, pp. 3-12.

### *I. Grounds 1 and 2 are not cognizable and, alternatively, are without merit.*

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

In Ground 1, Petitioner argues that his conviction for forcible rape violated the statute of limitations. Doc. 1, p. 5. In Ground 2, Petitioner argues that the state was without jurisdiction to file the third indictment against him "because the statute of limitations ran" on the prior indictments. Doc. 1, p. 6. Petitioner also claims that direct appeal counsel was ineffective for failing to raise these issues and post-conviction counsel abandoned these issues after the denial of Petitioner's post-conviction appeal. *Id.* at 5-7.

In affirming the denial of post-conviction relief, the Missouri Court of Appeals, Western District, found that the applicable statute of limitations for Petitioner's crime was set forth in Mo. Rev. Stat. § 556.037. Doc. 9-11, p. 6. The state appellate court concluded that, under state law, "the version of Section 556.037 that was in effect when the 2010 indictment was filed applied to the charges against [Petitioner], and there was effectively no statute of limitations on his crime." *Id.* at 6-8.

"[A] violation of state law, without more, does not state a claim under the federal Constitution . . . . ." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993). Specifically, "a state court's failure properly to apply a state statute of limitations does not violate due process or, indeed, any other provision of the Constitution or a federal statute." *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000). Furthermore, "[j]urisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law." *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("The question of whether the Missouri courts had jurisdiction to sentence Poe was one solely of state law and is therefore not properly before this court.").

As to the underlying claims of ineffective assistance of counsel, in order for Petitioner to successfully assert a claim for ineffective assistance of counsel, Petitioner must demonstrate that

4

his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To satisfy the prejudice prong, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694.

Because Grounds 1 and 2 allege only violations of state law that fail to raise a constitutional claim, Grounds 1 and 2 are not cognizable in this federal habeas proceeding. Alternatively, the decision of the Missouri Court of Appeals as to the applicable statute of limitations is reasonable and is entitled to deference under § 2254(d). Insofar as Petitioner claims that direct appeal counsel was ineffective for failing to present Grounds 1 and 2 on direct appeal, Petitioner fails to establish how he was prejudiced by direct appeal counsel's failures, because the Missouri Court of Appeals denied Petitioner's statute of limitations claim when it was presented on appeal from the denial of post-conviction relief. Finally, Petitioner's claims that post-conviction counsel abandoned the issues after his post-conviction appeal or did not otherwise raise the issues to his liking fail to state cognizable grounds for relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.); *see also Christenson v. Ault*, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal

5

constitutional right to the effective assistance of post-conviction counsel.") (citation omitted). Accordingly, Grounds 1 and 2 are denied.

### *I. Ground 3 is without merit.*

In Ground 3, Petitioner argues that his conviction violates his Sixth Amendment right to a speedy trial. Doc. 1, p. 8. In determining whether a speedy trial violation has occurred, courts apply a balancing test based on the following four factors: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "Length of delay is a threshold issue, and a court must determine whether a delay is presumptively prejudicial, taking into consideration the particulars of each case." *Stewart v. Nix*, 972 F.2d 967, (8th Cir. 1992) (internal citations and quotations omitted). Moreover, as with all other state court adjudications on the merits, this Court cannot disturb a state court's decision on a speedy trial issue unless the decision was either contrary to or an unreasonable application of federal law. *Taylor v. Roper*, 561 F.3d 859, 862-63 (8th Cir. 2009) (citing 28 U.S.C. §2254(d)(1) and (2)).

The Missouri Court of Appeals, Western District, weighed the *Barker* factors and denied Ground 3 as follows:

> ### *Length of Delay*
>
> The first factor is the length of delay. At all points in the proceedings below, Ferdinand argued that the length of delay at issue in this case was nineteen months. On appeal, Ferdinand now claims that the length of delay should be calculated from the time of arrest in 1993 through the date of his trial in 2011, a period of approximately seventeen years. We disagree.
>
> As noted, the Sixth Amendment right to a speedy trial does not begin to run until a defendant is arrested or an information or indictment is filed. *Dillard*, 931 S.W.2d at 161. The law is well settled that "the period between the voluntary dismissal of . . . charges and their re-filing does not count in determining Sixth Amendment speedy trial violations." *Buchli*, 152 S.W.3d at

6

308 (citing *State v. Anderson*, 687 S.W.2d 643, 647 (Mo. App. W.D. 1985); *United States v. MacDonald*, 456 U.S. 1, 8 (1982)).

Ferdinand cites no authority to support his argument that the periods of time between the First and Second Filings, and the Second and Third Filings, *when no indictment against him was pending*, should be included in calculating the length of delay. Ferdinand does rely heavily (but mistakenly) on *Klopfer v. North Carolina*, 386 U.S. 213 (1967) to suggest that the time between indictments should be included in calculating delay. *Klopfer is* easily distinguishable. In *Klopfer*, the United States Supreme Court condemned the delay which resulted from "an unusual North Carolina criminal procedural device known as the '*nolle prosequi* with leave.'" *Id.* at 214 . . . .

In contrast to North Carolina, under Missouri law, a nolle prosequi is a prosecutor's formal entry on the record indicating that a pending charge will no longer be prosecuted, resulting in a dismissal without prejudice unless jeopardy has attached to bar subsequent prosecution. *Buchli*, 152 S.W.3d at 307. Here, it is undisputed that the charges against Ferdinand did not remain pending between the First and Second Filings, and between the Second and Third Filings.

Though we reject Ferdinand's contention that the length of delay he experienced was seventeen years, we acknowledge that the State concedes that Ferdinand was subject to indictment for a collective period of twenty-four months, a time period which the State also concedes is presumptively prejudicial under Missouri law. . . . . We turn our attention therefore to the remaining three factors to determine whether the trial court abused its discretion in denying Ferdinand's motion to dismiss for violation of his Sixth Amendment right to a speedy trial.

*The reason for the delay*

. . . .

Ferdinand argues that the State's delay awaiting favorable DNA evidence was intended to gain tactical advantage and should be weighed heavily against the State. It is undisputed that the First Filing was dismissed because DNA test results had not been received, that the Second Filing was dismissed because DNA test results were inconclusive, and that the Third Filing followed the use of new DNA testing technology to identify Ferdinand.

The trial court found "that waiting for DNA evidence is a legitimate reason for dismissing a case and re-filing it." We agree. This case is very similar to *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. W.D. 1995), where delay was a result of the evolving technology of DNA testing on which the State was basing its case. Nothing in the record in that case indicated bad faith or

7

Case 4:16-cv-00232-GAF   Document 12   Filed 06/27/16   Page 7 of 11

negligence on the part of the State. *Id.* Similarly, Ferdinand points to nothing in this record suggesting that the State acted in bad faith or negligently in awaiting conclusive DNA test results.

Though the State's explanation for delay is reasonable, "it is the ultimate duty of the State to bring the accused to trial. State caused delay, even where there is no deliberate attempt to delay the trial or hamper the defense, weighs against the State . . . but not heavily." *Id.* (internal citations omitted).

We temper this conclusion by the fact that Ferdinand also contributed to the total delay. In the First Filing, Ferdinand requested two or three continuances related in part to his desire to obtain the DNA evidence. After the Third Filing, some delay resulted from Ferdinand's motion for a change of judge. "[W]here a defendant has contributed to the delay by requesting, and being granted, continuances, he cannot later successfully allege the denial of his right to a speedy trial." *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010) "Delays attributable to the defendant weigh heavily against the defendant." *Id.* (citation omitted).

### *The defendant's assertion of his right to speedy trial*

. . . .

. . . . Ferdinand argues that his assertion of his right to a speedy trial in 1994 should be weighed in his favor, and effectively treated as a continuing assertion. We disagree.

Ferdinand did not assert his right to a speedy trial at anytime during the pendency of the First Filing. Ferdinand did assert the right to speedy trial in 1994 shortly after the Second Filing. However, that assertion was specific to the Second Filing and did not relate back to the First Filing, or carry forward to the Third Filing. *Duncan v. State*, 864 S.W.2d 431, 433 (Mo. App. E.D. 1993) (holding speedy trial request is specific to a particular case, and does not carry forward when State re-files following nolle prosequi of first case). Thus, when the Second Filing was dismissed, the request for speedy trial became moot. *Id.*

Following the Third Filing, Ferdinand waited almost seven months before filing another request for speedy trial . . . .

Moreover, Ferdinand reasserted his speedy trial right in connection with the Third Filing four months ***after*** he agreed to a trial setting of February 14, 2011. His case was, in fact, tried on this agreed date. *State v. Powers*, 612 S.W.2d 8, 12 (Mo. App. S.D. 1981) (holding that delay from arraignment to trial date should not be weighed against State when the trial date is one agreed to by the defendant).

8

*Prejudice to the defendant*

The fourth factor is prejudice to Ferdinand. "The final and most important factor to be considered in the balancing test is whether the delay actually prejudiced the defendant." *Woodworth*, 941 S.W.2d at 694. In making the determination of prejudice, "we must consider: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) limitation of the possible impairment of the defense." *Id.* "The last of the three components is considered most vital to the analysis" *Newman*, 256 S.W.3d at 216-17 (citation omitted). . . . .

Ferdinand argues that the delay in his prosecution impaired his defense because [Donald] Collier[2] could not be located, Jackie [Ferdinand, Collier's ex-girlfriend and Petitioner's sister,] would have known more about Collier's whereabouts in 1993 or 1994, and he lost the opportunity for concurrent sentencing at an earlier date. These assertions relate solely to the third of the aforesaid components.

The record demonstrates no actual impairment of Ferdinand's defense. At the hearing on his motions, Ferdinand argued that Collier could not be found. . . . . Here, however, the trial court did not accept Ferdinand's claim that Collier could not be found. Instead, the trial court concluded that the search for Collier was neither diligent nor complete. The trial court's conclusion was based on [Investigator Dawn] McClinton's testimony that her efforts were limited to talking to Jackie on two occasions and a truncated Case.net search. Ferdinand argued that it is reasonable to conclude that Jackie would have been better able to assist in locating Collier in 1993 or 1994 given Collier's apparent claim that he was the father of Jackie's baby. This argument is merely speculative, however, as no evidence about the extent of contact between Jackie and Collier in 1993 or 1994 was presented to the trial court.

In any event, the trial court found that Collier's absence did not demonstrate prejudice. Though Ferdinand loosely contended that Collier *might* have been able to verify whether Jackie and the Victim spent the night at his house on March 18, 1993, and *might* have been able to verify that the Victim stole money from him prompting her to lie, the trial court aptly observed that, "I don't know what the lie would have been. I don't know whether the lie would have been that there was sexual activity or the lie would have been whether it was forced activity; I don't know. But, again, I do think that's all important, in the way I read the case authority on your issues of prejudice." Ferdinand's general assertions about what Collier's testimony *might* have been were insufficient to establish that Collier's absence as a witness at trial was prejudicial to his defense. . . . .

---

[2] The victim reported that the alleged rape occurred at Collier's home. Doc. 95, p. 3.

9

> This conclusion is particularly appropriate in light of the fact that Ferdinand stipulated at trial that on March 18, 1993, he had sexual intercourse with the Victim without her consent by use of forcible compulsion. Given this factual admission, any prospect of prejudice based on the fact that Collier *might* have been able to testify that the Victim had a motivation to lie is negated.
>
> Ferdinand further claimed that he was prejudiced by the delay because it deprived him of the opportunity to receive at the earliest possible date sentencing concurrent to the time he had been serving since 1994 on an unrelated conviction . . . . We agree with the trial court's assessment that Ferdinand retained the ability to negate any prejudice associated with denied or delayed concurrent sentencing by pleading guilty in response to either the First or Second Filing.
>
> After applying the *Barker* factors, we find that the total delay of twenty-four months was presumptively prejudicial, but that the presumption of prejudice has been overcome. The reason for delay weighs only slightly against the State and is attenuated by Ferdinand's contribution to the total delay. The delayed assertion of Ferdinand's right to a speedy trial after the Third Filing does not assist Ferdinand, particularly as the right was asserted *after* Ferdinand agreed to a trial setting. Finally, the record does not support a conclusion that Ferdinand was prejudiced by the delay. The trial court did not abuse its discretion in denying Ferdinand's motion to dismiss for violation of his Sixth Amendment right to a speedy trial.

Doc. 9-5, pp. 11-20 (alterations added, footnotes omitted, emphasis in original). The state appellate court also concluded that any pre-arrest or pre-charging delay did not violate Petitioner's Fifth Amendment right to due process. *Id*. at 20-23.

The state appellate court's decision is reasonable and is entitled to deference under Section 22554(d). The state appellate court cited to and reasonably applied the *Barker* factors. Insofar as the state courts' decision rested on determinations of the witnesses' credibility at Petitioner's state post-conviction evidentiary hearing, credibility determinations are left for the state court to decide. *Graham*, 728 F.2d at 1540. Because the state courts' determinations as to Ground 3 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

10

United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 3 will be denied.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, Petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

/s/ Gary A. Fenner
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 27, 2016.